## THE TUSCANIA.
### No. 350.

Circuit Court of Appeals, Second Circuit.

June 9, 1930.

Lord, Day & Lord, of New York City (George de Forest Lord and James S. Hemingway, both of New York City, of counsel), for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The primary dispute is whether the alien seamen were discharged or deserted. They were Italians who signed the ship's articles at Naples, Italy, on August 20, 1923, four as stewards and one as cook. The intention of the appellant was to pay off and discharge them at New York, and, upon the Tuscania's arrival on September 1, 1923, there was filed with the Commissioner of Immigration a manifest (Libelant's Exhibit 3), in which they were listed among the seamen "to be paid off or discharged at port of arrival," and another manifest (Libelant's Exhibit 4) in which their names appeared under the heading, "members of crew to be discharged at New York." Thereupon a written notice, Exhibit 6, was served by the immigrant inspector upon the vessel's chief officer, ordering delivery of said aliens at Ellis Island. This order was not obeyed. The testimony is that the aliens escaped from the ship in some unknown way; that they did not sign off the articles before the British consul, as the appellant contends was necessary, the vessel being of British registry, and that their wages were deposited with the ship's agents and were never called for by them.

**169**

Nevertheless, when the Tuscania sailed on September 8, 1923, there was filed with the immigration authorities a report, form 689, signed by the purser (Libelant's Exhibit 5), which named said aliens under the heading "discharged seamen," instead of under the heading "deserting seamen." There is testimony that this report was filed in error. The purser's deposition explains that, had he entered these seamen as deserters, they would have forfeited their wages, which he would have been required to pay into the shipping office at Glasgow; that he listed them as discharged because he thought they would ultimately comply with the immigration laws and would then be able to obtain from the ship's agents the wages to which they were entitled. There is also in evidence a letter written by the appellant to the Commissioner of Immigration under date of October 6, 1923, which reads as follows:

"Dear Sir, We have your favour of the 26th ulto. file 98889/152, in the case of five seamen who were not produced for inspection upon arrival of 'Tuscania' at New York Sept. 1st 1923 and wish to inform you that we are unable to explain at this time as to how these men succeeded in leaving the ship and only can assume that they managed to elude the guards stationed in and about the vessel. We wish further to correct the statement filed by ship's officials (Form 689) to the effect that these men were discharged from the vessel. This statement is erroneous and should have read that these men were to be paid off at New York as they were signed on for one voyage only and were to be returned at our expense to Italy per s. s. 'Aquitania' from New York Sept. 4th."

The statement therein that the men were to be returned to Italy finds corroboration in Libelant's Exhibit 4, in which they were stated to be "in transit to Naples."

The appellant contends that the foregoing facts do not disclose a violation of section 33 of the Immigration Act of 1917 (39 Stat. 896 [8 USCA § 168]). Section 33 provides that it shall be unlawful and shall be deemed a violation of section 32 (39 Stat. 895), which imposes a penalty for the negligent failure to detain a seaman on board if required by immigration officials, "to pay off or discharge any alien employed on board any vessel arriving in the United States from any foreign port or place, unless duly admitted pursuant to the laws and treaties of the United States regulating the immigration of aliens. * * *" Obviously, there was no evidence that the seamen were paid off. The issue is therefore

narrowed to whether the evidence will sustain a finding that they were discharged. While the District Court made no express finding to that effect, its decree is explicable only on that hypothesis.

If "discharge" as used in the statute means a termination of the contract in accordance with the law of the vessel's flag, and if British law requires a discharge in a foreign port to be approved by the British consul, as appellant contends, there was clearly no discharge of these alien seamen. We shall, however, assume without decision, in accordance with the government's contention, that the statute intends to forbid any dismissal, however informal, of an alien employee not duly admitted pursuant to the immigration laws. But dismissal implies some voluntary act by the employer to terminate the employment. An employee who leaves without notice and with wages still due him cannot be said to have been dismissed or discharged. All the evidence leads to the conclusion that these aliens deserted, except the admission of discharge contained in Exhibit 5. That admission is not conclusive. It is contradicted by the testimony of the purser, without impeachment of his veracity or the accuracy of his recollection. The letter of October 6, 1923, gave prompt notice that the admission had been made in error, and the abandonment of wages by the seamen tends strongly to support the story that they deserted. We conclude that the evidence will not sustain a decree based on a finding of an unlawful discharge in violation of section 33. This makes it unnecessary to consider the various other points presented in the briefs and argument.

The decree is reversed, and the libel dismissed.